UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT G. DeBRUIN,

                                   Plaintiff,

                                                                                 DECISION AND ORDER

                                                                                 16-CV-6437L

              v.

THE MACEDON POLICE DEPARTMENT, et al.,

                                   Defendants.
_____

Plaintiff Robert DeBruin brought this action against the Macedon (N.Y.) Police Department ("MPD") and MPD Chief John Colella, asserting claims pursuant to 42 U.S.C. § 1983, based on alleged violations of his rights under the Fourth and Eighth Amendments to the United States Constitution. Plaintiff's claims arise from his arrest on January 26, 2015, the details of which are set forth below.

Defendants have moved for summary judgment dismissing the complaint. Plaintiff opposes the motion.

### FACTUAL BACKGROUND[1]

On January 26, 2015, at around 8:30 a.m., plaintiff was driving his pickup truck on N.Y. Rt. 31 in Macedon. Colella was out at that time, driving on patrol.

---

[1] Unless otherwise noted, the facts recited here are undisputed, as reflected by the parties' respective statements of fact (Dkt. #17-1, #20-2).

As he was approaching the intersection of Rt. 31 and Canandaigua Road, Colella saw plaintiff's vehicle make a left turn onto Rt. 31, heading west. Colella noticed that the truck had front-end damage and a flat tire, which caused plaintiff to make an unusually wide left turn.

Colella made a U-turn, turned on his emergency lights, and began following plaintiff. Plaintiff did not immediately stop or pull over, but continued driving. Colella turned on his siren.

Plaintiff turned onto Commons Parkway, pulled into the parking lot of his place of business, parked his vehicle and got out. Colella followed him into the lot, parked his car and got out. At around the same time, MPD Officer David Demchuck arrived, in response to Colella's radio call for assistance.

As he was approaching plaintiff's truck, Colella saw that plaintiff was attempting, with some difficulty, to tie his shoelaces. Colella spoke to plaintiff and asked whether he had been in an accident and whether he needed medical attention. Plaintiff answered no to both questions. Colella noticed that plaintiff seemed to have difficulty speaking and that he was slurring his words.

Colella asked plaintiff if he was under the influence of alcohol, drugs or medication. Plaintiff stated that he had taken some over-the-counter sinus medicine and some herbal supplements. Colella believed that plaintiff was under the influence of some substance(s), but was not sure what.

Plaintiff's son Joshua, who was inside the adjacent building, then came out and spoke to Colella. Colella told Joshua that plaintiff had been driving in an abnormal manner and was acting strangely. Colella asked Joshua if plaintiff was taking any medication, and Joshua said

no. Colella allowed Joshua to speak to his father, who told Joshua, "The strange people hit me twice." Joshua did not know what plaintiff was talking about when he said that.

Plaintiff alleges that Joshua told Colella that something was "definitely wrong" with plaintiff and that he needed medical attention. Colella allegedly responded, "We'll get him checked out."

Colella wanted to give plaintiff a field sobriety test, but because it was cold outside, he drove plaintiff to the police station, about two miles away. Colella conducted the test inside the MPD's heated garage bay. Plaintiff failed the components of the test (horizontal gaze/nystagmus, walk and turn, one-leg stand and finger touch).

Plaintiff was twice offered medical attention, which he declined. He also continued to maintain that the only substances he had taken were sinus medicine and herbal supplements.

In the meantime, Joshua had telephoned plaintiff's fiancée, Stella Koliopoulos ("Stella"), to let her know what was going on. Both Joshua and Stella went to the police station. They were told that plaintiff was "fine," but were not allowed to see him.

Based on his observations of plaintiff, Colella did not believe that plaintiff was under the influence of alcohol. He contacted the Wayne County Sheriff's Office and requested a drug recognition expert.

The Sheriff's Office employed only one certified drug recognition expert, Deputy Travis Dunn. Dunn was not on duty, but at home, some miles away. He was called, eventually arrived, and administered a drug influence evaluation, which lasted about ninety minutes. Dunn concluded that plaintiff was under the influence of cannabis/marijuana. Plaintiff refused to provide a blood or urine sample.

Plaintiff was issued appearance tickets for driving while ability impaired by drugs (which was charged as a felony, because plaintiff had a 2012 conviction for driving while intoxicated), failing to yield the right of way to an emergency vehicle, failing to use the designated lane, and leaving the scene of a property damage accident. Plaintiff was released from custody at around 2:00 p.m. Stella drove him home.

Stella later testified that when she told plaintiff she was going to take him to a hospital, he replied, "No, no." But according to both Stella and Joshua, plaintiff continued "talking goofy" that day, talking about "little people" who had hit his truck. After calling plaintiff's doctor, Stella and Joshua took plaintiff to Rochester General Hospital, where he was evaluated on January 26, 27 and 28, 2015. The examining physician, Dr. David Kopp, has stated that the results of various medical tests were inconclusive and that the etiology of plaintiff's symptoms on January 26 remains "unclear." Plaintiff has not identified any medical expert, and since his time to do so has passed, plaintiff concedes that no expert will testify in this case that he was experiencing a serious medical condition requiring immediate care on January 26.

Plaintiff stated at his deposition that he recalled almost nothing about the events of that day, from the initial encounter with Colella through the tests administered by Deputy Dunn. He has stated under oath that he has no idea what caused his symptoms that morning. He has never been diagnosed with any medical problem that could account for his odd behavior that day. Plaintiff ultimately pleaded guilty to leaving the scene of a property damage accident. The other charges were dismissed.

In this lawsuit, which was brought in June 2016, plaintiff has asserted two claims. The first alleges that "defendants' detention and arrest of Mr. DeBruin lacked probable cause and was per se unreasonable under the Fourth Amendment to the United States Constitution."

Complaint ¶ 29.  The second alleges that defendants' "refusal to provide medical evaluation and/or treatment of the plaintiff during the time he was in their custody constituted deliberate indifference to the plaintiff's serious medical condition," in violation of his rights under the Eighth Amendment.  Complaint ¶ 32.

## DISCUSSION

### I. Fourth Amendment Claim

In support of their motion for summary judgment, defendants contend that plaintiff's Fourth Amendment claim fails because defendants had probable cause for plaintiff's arrest and detention.  Plaintiff's claim is essentially a claim of false arrest.  Plaintiff alleges that he was arrested and detained without probable cause.

To state a claim for false arrest under New York law, a plaintiff must allege that: "(1) the defendant intended to confine [him], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451 (N.Y. 1975)). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted) (citing cases).

Probable cause to arrest defeats a false arrest claim.  *Id.*  "In general, probable cause ... exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime." *Id.*  The relevant inquiry focuses on "the facts as the officers knew them in light of the specific elements of each crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

Plaintiff concedes that Colella was justified in at least briefly detaining him in the parking lot.  But, plaintiff asserts, information brought to Colella's attention both in the parking lot and later at the police station "dissipated" whatever probable cause Colella may have had.  Specifically, plaintiff relies on Joshua's statements to Colella that something was wrong with plaintiff, on a test at the police station showing that plaintiff's blood pressure was abnormally high (178/122), and on Colella's own assessment that plaintiff was not under the influence of alcohol.  According to plaintiff, Colella and the other officers should have realized that plaintiff's behavior was due to some underlying condition that required medical attention.

This claim fails for multiple reasons.  First, Colella's detention of plaintiff was clearly supported by probable cause.  Plaintiff was obviously in no condition to drive.  Colella was not required to take Joshua's word for it that plaintiff must have been suffering from some medical problem.  Plaintiff himself declined Colella's offer of medical attention.

Furthermore, plaintiff has not presented proof that his behavior *was* caused by some medical condition, unrelated to his use of any chemical substances.  All that the evidence shows is that he was driving erratically, had apparently been in a vehicular accident, was behaving strangely, and at the police station, his blood pressure was found to be high.  Under the circumstances, it was entirely reasonable for Colella to detain plaintiff long enough to have him assessed by Deputy Dunn.

Aside from that, I find that defendants are entitled to qualified immunity, which "shields federal and state officials from money damages unless [the] plaintiff pleads facts showing

(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In a false-imprisonment context, a claim will be defeated by qualified immunity if officers of reasonable competence could disagree about whether probable cause existed. *See DaCosta v. Tranchina*, 783 F.3d 54, 55 (2d Cir. 2019); *Oquendo v. City of New York*, 774 Fed.Appx. 703, 705 (2d Cir. 2019).

While courts have recognized that probable cause can "dissipate" over time,[2] "[t]he Second Circuit has not addressed the issue of whether an officer can be liable for false imprisonment if, after a lawful arrest, probable cause dissipates and the suspect is not released from custody." *Walker v. City of New York*, No. 15 CV 500, 2017 WL 2799159, at *5 n.5 (E.D.N.Y. June 27, 2017). *See also United States v. Pabon*, 871 F.3d 164, 177 (2d Cir. 2017) (finding it unnecessary to decide whether an officer may, in an extreme case, be required to release a detainee arrested without a warrant where probable cause has unequivocally dissipated, rendering further detention unreasonable); *Berrio v. City of New York*, No. 15-cv-9570, 2019 WL 1437585, at *7 n.7 (S.D.N.Y. Mar. 29, 2019) ("Plaintiff provides no legal authority to support the conclusion that she can maintain a claim for false imprisonment, or failure to intervene, for the time she was held after probable cause dissipated"). Thus, no "clearly established" right has been identified here.

By its very nature, qualified immunity presupposes that reasonable officers might disagree about what course of action is best, in a given situation. The court is not to decide the

---

[2] That concept is generally applied in the context of malicious prosecution claims. *See*, *e.g.*, *Harrison v. County of Nassau*, _ Fed.Appx. __, 2020 WL 1189398, at *2 (2d Cir. 2020); *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

matter with the "20/20 vision of hindsight," *Saucier v. Katz*, 533 U.S. 194, 205 (2001)), but based on what a trained officer might reasonably have believed at the time of the event. *Id.  See, e.g.*, *Green v. Topnotch at Stowe*, No. 06-CV-96, 2008 WL 345886, at *4 (D.Vt. Feb. 7, 2008) (concluding that "[d]efendant would be entitled to qualified immunity even if the arrest were not supported by probable cause," based on circumstances that existed at the time), *aff'd*, 359 Fed.Appx. 249 (2d Cir. 2010).  Based on the undisputed facts of this case, I find as a matter of law that Colella's actions were objectively reasonable, and that defendants are therefore entitled to qualified immunity.

**II. Eighth Amendment Claim**

In his second cause of action, plaintiff alleges that defendants violated his Eighth Amendment rights by refusing "to provide medical evaluation and/or treatment" during his six hours in custody.  Complaint ¶ 32.

At the outset, I note that since plaintiff was not in prison at the time of the events, his claim is not governed by the Eighth Amendment. *See Woods v. Town of Tonawanda*, No. 13CV798, 2020 WL 1703537, at *10 (W.D.N.Y. Apr. 8, 2020).  Plaintiff's claim is properly brought under the Due Process Clause of the Fourteenth Amendment, which guarantees similar but not identical rights as the Eighth Amendment.  To state a Fourteenth Amendment claim, there must be an actual deprivation of adequate medical care, *i.e.*, a failure to take reasonable measures in response to a serious medical condition, and the plaintiff must show that the defendants knew or should have known that his condition posed an excessive risk to health or safety. *Id.* at 11.

This claim is just as meritless as the Fourth Amendment claim. As stated, there is no proof, aside from one high blood pressure reading (the cause of which has never been identified), that plaintiff *was* suffering from a serious medical condition. Plaintiff has no medical expert who could testify otherwise. A jury verdict in favor of plaintiff could therefore rest only upon unsupported speculation. In addition, since there is no proof that plaintiff was suffering from a serious medical condition, there is no basis for a finding that defendants knew or should have known that he needed immediate medical attention.

Essentially for the reasons stated with respect to the Fourth Amendment claim, even if by some stretch of reasoning a reasonable person could conclude that plaintiff's rights were violated, Colella would be entitled to qualified immunity. Plaintiff was in custody for about six hours, while the officers quite reasonably attempted to determine whether he was under the influence of any substances. He was offered medical attention, which he refused. Following his release from custody, plaintiff was examined by a physician and released, apparently with no lasting ill effects, or at least none attributable to his detention. In short, plaintiff has failed to show that his rights were violated, much less that any rights in question were clearly established at the time of the events. *See Francis v. Fiacco*, 942 F.3d 126, 151 (2d Cir. 2019) (holding that plaintiff's Eighth Amendment claim failed, since court was "aware of no precedent clearly

establishing an Eighth Amendment right that the State Defendants violated under the circumstances of this case").[3]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #17) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 27, 2020.

---

[3] I also agree with defendants that the Macedon Police Department is not subject to suit. *See Casaccia v. City of Rochester*, No. 17-cv-6323, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018) (holding that Rochester Police Department "is an administrative arm of the City and lacks the capacity to sue or be sued"). To the extent that the complaint can be read as a asserting a claim against the Town of Macedon, the Court's rulings on the merits of plaintiff's claims against Colella render it unnecessary for me to address defendants' arguments concerning municipal liability.